**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE: SPECIALTY HOSPITAL OF WASHINGTON, LLC _____ CAPITOL HILL GROUP, Plaintiff, v. DCA CAPITOL HILL LTAC, LLC, *et al.*, Defendants. | Civil Action No. 16-090 (BAH) Chief Judge Beryl A. Howell |

**MEMORANDUM OPINION**

The plaintiff, Capitol Hill Group, the landlord of a hospital building located at 700

Constitution Avenue, NE, Washington, D.C., commenced this suit in Superior Court for the

District of Columbia against the tenants of this building, the defendants, DCA Capitol Hill

LTAC, LLC and DCA Capitol Hill SNF, LLC, alleging breach of the rental contract due to the

defendants' withholding of more than $1,000,000 in rent. Compl., ECF No. 1-1, Adv. Proc. 15-

10027 (Bankr. D.C.). The defendants removed the suit to the United States Bankruptcy Court

for the District of Columbia, pursuant to 28 U.S.C. § 1452(a), on grounds that federal bankruptcy

jurisdiction exists, under 28 U.S.C. § 1334(b), because this case "arises in and/or is related to" a

separate bankruptcy proceeding involving the prior lessee of the building. Defs.' Notice of

Removal ("Defs.' Removal Notice") ¶ 1, ECF No. 1, Adv. Proc. 15-10027 (Bankr. D.C.).[1] The

---

[1]     Upon removal pursuant to 28 U.S.C. § 1452(a), the case was automatically referred to the Bankruptcy Court. *See* D.C. Local Bankruptcy Rule 5011-1(a)–(b) (referring to Bankruptcy Court "all proceedings arising under Title 11 or arising in or related to a case under Title 11," including any case removed to District Court on the basis of § 1334 jurisdiction).

plaintiff promptly filed a motion to withdraw the reference from the Bankruptcy Court, ECF No. 1, which motion was referred to the Bankruptcy Court for a report and recommendation, Mem. & Order, ECF No. 5. Pending before the Court are the Bankruptcy Court's Report and Recommendation ("R&R"), ECF No. 6, recommending grant of the plaintiff's motion for withdrawal of the reference to Bankruptcy Court for lack of federal bankruptcy jurisdiction, the defendants' objections thereto, Defs.' Obj. Bankr. Ct.'s R&R ("Defs.' Obj."), ECF No. 7, and the plaintiff's motion for remand of the case to Superior Court, Pl.'s Mot. Remand, ECF No. 8. For the reasons explained more fully below, this Court lacks subject matter jurisdiction over this case and, consequently, the plaintiff's motions to withdraw the reference and to remand are granted.[2]

## I.   BACKGROUND

The factual background of this case is extensively reviewed by the Bankruptcy Court, *see* R&R at 4–16, and, consequently, will only be briefly summarized, followed by review of the relevant procedural history.

### A.   FACTUAL BACKGROUND

Specialty Hospital, the previous lessee of the hospital building at issue in this case, declared bankruptcy and, in the course of its bankruptcy proceedings, assigned the lease in 2014 to the defendants. R&R at 5. As part of this confluence of events, two separate agreements among different parties were executed and an order of the Bankruptcy Court was issued that now form the basis of the defendants' assertion of federal bankruptcy jurisdiction.

---

[2]     The defendants have requested oral argument on their objections, Defs.' Mot. for Hearing, ECF No. 12, which request is denied since the R&R and briefing by the parties have amply discussed the issues. *See* LCvR. 7(f) (stating allowance of oral hearing "shall be within the discretion of the Court"). The plaintiff's motion to file a sur-reply brief, ECF No. 13, is also denied because the defendants have not met their burden, *see infra* Section III, of establishing subject matter jurisdiction, rendering unnecessary any further argument from the plaintiff.

2

Case 15-10027-SMT   Document 144-1   Filed 11/28/17   Page 3 of 18

The first agreement, titled "Specialty Hospital of America, LLC Landlord Sale Support Agreement Term Sheet," was entered on May 28, 2014, by the plaintiff and the defendants' parent company, which is not a party to this action. R&R at 5; Pl.'s Resp. Defs.' Obj. ("Pl.'s Resp."), Ex. A ("Sale Support Agreement" or "SSA"), ECF No. 9-2. This Sale Support Agreement established the framework for finalizing the terms of the new lease to replace the extant lease between the plaintiff and the debtor, Specialty Hospital. R&R at 5–7. By its terms, this agreement was not "exhaustive as to the final terms," such that if any SSA terms conflicted with a subsequent agreement between the parties, "the latter shall govern." SSA at 1; *see also id*. ¶ 16 (noting that "New Lease and the SSA will be subject to the negotiation, execution and delivery of definitive forms of agreement . . . embodying the terms set forth herein reasonably satisfactory to Buyer and Landlord."). Significantly for the defendants' justification for the withholding of rent, the SSA provided, as a condition for the defendants' parent company entering the new lease, that the plaintiff would "fully fund the costs and expenditures required to complete the new HVAC [Heating, Ventilation, and Air Conditioning] system and boiler room" and construction on a "multi-rec room project and entry ramp project." *Id*. ¶ 18. In the defendants' view, the plaintiff "failed to comply with these conditions and fraudulently represented that it complied with these conditions." R&R at 7.

The second agreement, titled "Asset Purchase Agreement," was executed on June 20, 2014, by Specialty Hospital and the defendants' parent company providing for the sale of substantially all of the debtor's assets to the latter. R&R at 8 n.3; Pl.'s Resp., Ex. C ("Asset Purchase Agreement"), ECF No. 9-4. Although the plaintiff was not a party, this agreement nonetheless referenced obligations of the plaintiff stating that the plaintiff "shall be in full

3

compliance with the terms of the Sale Support Agreement," Asset Purchase Agreement § 8.1(l), and that the new lease would be "effective as of the Closing" of the sale, *id*. § 8.1(m).

The Bankruptcy Court approved the Asset Purchase Agreement in a Sale Order, entered on June 30, 2014, thereby authorizing the debtor to sell its assets to the defendants' parent company. R&R at 9–10; Pl.'s Resp., Ex. D ("Sale Order"), ECF No. 9-5. The Sale Order provides that "upon certain payments being made to [the plaintiff] by the closing of the sale, the new lease was to be deemed assumed by Specialty Hospital and assigned to [the defendants' parent company] . . . with all preexisting obligations under the lease as of the closing date to be treated as cured." R&R at 10–11; Sale Order ¶ 32. The Sale Order further expressly states that the Bankruptcy Court retains "exclusive jurisdiction" to enforce and resolve disputes related to the Asset Purchase Agreement. Sale Order ¶ 53.

About six months after entry of the Sale Order approving the sale of the debtor's assets, the plaintiff and defendants executed, on December 16, 2014, the new lease, titled "Amended and Restated Lease Agreement." Pl.'s Resp., Ex. B ("2014 Lease"), ECF No. 9-3. Particularly relevant here, the 2014 Lease contains an express integration clause providing that the lease "contains and embodies the entire agreement of the parties hereto with respect to the subject matter hereof, and supersedes all prior agreements, negotiations, and discussions between the parties hereto." *Id*. § 24.10. Further emphasizing the controlling force of the 2014 Lease, this provision makes clear that "[a]ny representation, inducement or agreement that is not contained in this Lease shall not be of any force or effect." *Id*. Other provisions in the 2014 Lease referenced the plaintiff's obligations to complete construction of the new ramp and auditorium, and acknowledged installation of a new HVAC system, with detailed procedures and timing for resolution of any matters "in connection with such installation." *Id*. § 8.4.

4

Two days after execution of the 2014 Lease, Specialty Hospital and the defendants' parent company closed on the sale of debtor's assets and the 2014 Lease "was contemporaneously assumed and assigned and went into effect." R&R at 14.  As the Bankruptcy Court notes, if the defendants' parent company was not satisfied with the plaintiff's compliance with the terms of the Sale Support Agreement, the defendants' parent company was entitled not to complete the purchase under the Asset Purchase Agreement, § 8.1(l), but, instead, that company "proceeded to make the purchase, and apparently looked to § 8.4 of the [2014 Lease] as satisfactorily protecting the defendants with respect to issues regarding the HVAC system and the construction of a new auditorium and a new entry ramp." R&R at 15; *id*. at 9 (noting that defendants' parent company "could have backed out of completing the purchase if [plaintiff] failed to meet its obligations under the *Sale Support Agreement*") (emphasis in original).

According to the defendants, after the closing they discovered that, contrary to the requirements of the Sale Support Agreement and representations in the 2014 Lease, the plaintiff had not installed a new and fully-functioning HVAC system.  R&R at 14–15.  In September 2015, more than one year after the Bankruptcy Court's issuance of the Sale Order and nine months after the 2014 Lease went into effect, the defendants began withholding rent because of the plaintiff's alleged failure to install a fully-functioning HVAC system.  Pl.'s Mem. Supp. Mot. Remand ("Pl.'s Mem.") at 4, ECF No. 8-1.  To date, according to the plaintiff, the defendants have withheld more than $1,200,000 in rent. *Id*.

B.    **PROCEDURAL BACKGROUND**

On October 23, 2015, the plaintiff filed suit in Superior Court alleging that the defendants had breached the 2014 Lease by failing to pay rent due and seeking rent accrued as well as penalties, interest, costs, expenses, and attorneys' fees.  Compl. ¶¶ 129–39; Pl.'s Mem. at 4.  The plaintiff also seeks a declaratory judgment clarifying that, under the 2014 Lease, the landlord's

5

responsibility is limited to "construction of a ramp, awning and auditorium as defined in the Lease" and no additional HVAC upgrades and installation are required. Compl. ¶¶ 140–51, Relief Requested.

The defendants timely removed the case directly to United States Bankruptcy Court for the District of Columbia alleging bankruptcy jurisdiction, under 28 U.S.C. § 1334(b), due to this landlord-tenant matter arising in and being related to the original bankruptcy proceeding involving Specialty Hospital. Defs.' Removal Notice at 1–2; Defs.' Resp. Pl.'s Mot. Remand ("Defs.' Resp.") at 4, ECF No. 11; Pl.'s Resp. at 8. The defendants' Answer asserted four affirmative defenses based on the 2014 Lease, Defs.' Answer and Counter Claims ("Defs.' Ans.") ¶¶ 153–54, 162–63, ECF No. 18, Adv. Proc. 15-10027 (Bankr. D.C.), and four counterclaims for alleged violations of the Sale Order, fraudulent misrepresentation, and breach of contract by the plaintiff, *id.* ¶¶ 209–36.

The plaintiff responded to the defendants' removal of this action to Bankruptcy Court by moving to withdraw the reference to the Bankruptcy Court, Pl.'s Mot. Withdraw Reference, ECF No. 1, which motion was referred to the Bankruptcy Court for a report and recommendation, pursuant to 28 U.S.C. § 157(a). Mem. & Order at 1–4.

### C. BANKRUPTCY COURT'S REPORT AND RECOMMENDATION

The Bankruptcy Court recommends granting the plaintiff's Motion to Withdraw the Reference to the Bankruptcy Court because none of three categories of bankruptcy jurisdiction— "arising under," "arising in," and "related to" jurisdiction—exists here. R&R at 1, 16. Specifically, the Bankruptcy Court found that the plaintiff's claims arise solely under the 2014 Lease rather than a provision of the Bankruptcy Code, and thus the case lacks "arising under" bankruptcy jurisdiction. *Id.* at 16 (citing *Gupta v. Quincy Med. Ctr.*, 858 F.3d 657, 662 (1st Cir. 2017)).

Moreover, just because the original lease between Specialty Hospital and the plaintiff was assigned to the defendants in the bankruptcy proceedings, "arising in" jurisdiction was not established, because the lease dispute was not a claim that by its nature "'could only arise in the context of a bankruptcy case.'" R&R at 18–22 (quoting *Stoe v. Flaherty*, 436 F.3d 209, 218 (3d Cir. 2006)). Indeed, the "defendants point to no specific provision of the Sale Order that requires interpretation or enforcement by the Bankruptcy Court." *Id*. at 23. The Sale Order simply contemplated that the parties would enter into a new lease, and the parties entered into the 2014 Lease regardless of whether the conditions in the Asset Purchase Agreement, which were approved by the Sale Order, were satisfied. *Id*. at 23–24. "[T]he Bankruptcy Court's mere approval of the *Asset Purchase Agreement* via the *Sale Order*, and its authorization in the *Sale Order* of the assumption and assignment of an amended and restated lease that would be satisfactory to [defendants' parent company], did not automatically create jurisdiction over all future contract disputes arising under the [2014] *Lease* entered into incident to the *Asset Purchase Agreement*." *Id*. at 25 (emphasis in original) (citing *Gupta*, 858 F.3d at 664–65). In reaching this conclusion, the Bankruptcy Court assumed, without deciding, that: (1) "defenses to a complaint may be sufficient to establish 'arising in' jurisdiction" as an exception to the well-pleaded complaint doctrine; and (2) that "defendants can defend on the basis of [their parent company's] rights under the *Sale Support Agreement*, the *Asset Purchase Agreement*, and the *Sale Order* even though the defendants were not parties to those matters." *Id*. at 17–18 (emphasis in original).

Finding that the outcome of this proceeding will have no effect on the bankruptcy estate, the Bankruptcy Court further found no "related to" jurisdiction here. *Id*. at 33–34 (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984), *overruled in part on other grounds by Things*

7

*Remembered, Inc. v. Petrarca*, 516 U.S. 124, 124–25 (1995)). Thus, the Bankruptcy Court concluded that no bankruptcy jurisdiction exists in this case. *Id*. at 37.

The defendants' objections to the Bankruptcy Court's recommended grant of the plaintiff's motion to withdraw reference and the plaintiff's motion for remand are now ripe for consideration.

## II.  LEGAL STANDARD

Bankruptcy judges are authorized to both "hear and determine all cases under title 11" as well as "all core proceedings," as defined in 28 U.S.C. § 157(b)(2), "arising under title 11" or "arising in a case under title 11." 28 U.S.C. § 157(b)(1). For non-core proceedings that are "otherwise related to a case under title 11," bankruptcy judges may hear the proceeding but must then submit proposed findings of fact and conclusions of law to the district court for entry of any final order after *de novo* review of any "matters to which any party has timely and specifically objected." *Id*. § 157(c)(1).

"When it appears that a district court lacks subject matter jurisdiction over a case that has been removed from a state court, the district court must remand the case, 28 U.S.C. § 1447(c), and the court's order remanding the case to the state court whence it came 'is not reviewable on appeal or otherwise,' *id*. § 1447(d)." *Republic of Venezuela v. Philip Morris Inc.*, 287 F.3d 192, 196 (D.C. Cir. 2002). Likewise, orders to remand cases where the removing party had asserted federal bankruptcy jurisdiction, under 28 U.S.C. § 1334, are non-reviewable. 28 U.S.C. § 1452(b) (stating that an order issued under this subsection remanding "a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals . . . or by the Supreme Court of the United States"); *see also Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 129 (1995) ("If an order remands a bankruptcy case to state court because of a

timely raised defect in removal procedure or lack of subject-matter jurisdiction, then a court of appeals lacks jurisdiction to review that order under § 1447(d), regardless of whether the case was removed under § 1441(a) or § 1452(a).").  As a consequence of the statutory prohibition of appellate review of remanded cases, the legal standard for removal has largely been developed by the district courts.

"When the plaintiff makes a motion to remand, the defendant bears the burden of proving federal jurisdiction."  *Busby v. Capital One, N.A.*, 841 F. Supp. 2d 49, 53 (D.D.C. 2012) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  If the defendant is unable to make that showing, a "court must remand the case."  *Johnson-Brown v. 2200 M Street LLC*, 257 F. Supp. 2d 175, 177 (D.D.C. 2003).  "In light of the significant federalism concerns involved, this court 'strictly construes the scope of its removal jurisdiction.'"  *Moses v. SunTrust Mortg., Inc.*, 2012 U.S. Dist. LEXIS 4342, at *4 (D.D.C. Jan. 13, 2012) (quoting *Breakman v. AOL, LLC*, 545 F. Supp. 2d 96, 100 (D.D.C. 2008)).  Moreover, even "[w]here the need to remand is not self-evident, the court must resolve any ambiguities concerning the propriety of removal in favor of remand."  *Johnson-Brown*, 257 F. Supp. 2d at 177 (citing *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir.1999) and *Nwachukwu v. Karl*, 223 F. Supp. 2d 60, 66 (D.D.C.2002)).

## III.   DISCUSSION

The parties agree that subject matter jurisdiction over this case rests solely on whether the parties' dispute falls within the scope of 28 U.S.C. § 1334(b), which grants district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(b).[3]  The defendants contend that this

---

[3]      At the time of removal, the defendants also asserted that diversity jurisdiction existed, Defs.' Removal Notice ¶ 1; *see also* Mem. & Order at 1 n.1, ECF No. 5 ("The parties agree that this Court has subject matter

litigation "aris[es] in or relat[es] to" the Specialty Hospital bankruptcy proceedings. Defs.' Obj. at 8, 18–19.[4] They object to the Bankruptcy Court's finding otherwise, arguing that this "case requires the interpretation of several bankruptcy court orders," *id.* at 8, relying almost exclusively on the Sale Order.[5] The Court disagrees and instead concludes that the Bankruptcy Court reached the correct conclusion.[6]

### A. "Arising In" Jurisdiction

The Bankruptcy Court found no "arising in" jurisdiction present here because the instant case is not a dispute that by its nature "'could only arise in the context of a bankruptcy case.'" R&R at 19 (quoting *Stoe*, 436 F.3d at 218). "'[P]roceedings or claims arising in Title 11 are those that are not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy.'" *Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 489 (D.C. Cir. 2009) (quoting *Grausz v. Englander*, 321 F.3d 467, 471 (4th Cir. 2003)) (internal quotations omitted). Thus, "arising in" jurisdiction is limited to claims relating to the administration of a bankruptcy estate, such as "administrative matters, orders to turn over property of the estate, and determinations of the validity, extent, or priority of

---

jurisdiction on the basis of diversity."), but have since withdrawn that assertion, Defs.' Resp. at 15 (stating that defendants do "not continue to assert that diversity jurisdiction provides a basis for this case proceeding in federal court"); Pl.'s Mem. at 5–6 (noting that the parties are likely not fully diverse).

[4]      The defendants raise no objection to the Bankruptcy Court's conclusion that, since the claims at issue "do not 'arise under' a provision of the Bankruptcy Code," R&R at 16, no "arising under" jurisdiction exists. *See* generally Defs.' Obj.; *see also* Defs.' Removal Notice ¶ 1 (asserting jurisdiction "because this matter arises in and/or is related to" a bankruptcy proceeding).

[5]      Although defendants indicate that "several bankruptcy court orders" are at issue, Defs.' Obj. at 8, other than the Sale Order, they briefly mention only once the "orders approving the debtor-in-possession facility," *id.* at 12. They utterly fail to explain the significance of these latter orders to the instant dispute, leading inexorably to the conclusion that they simply do not support the exercise of bankruptcy jurisdiction.

[6]      The defendants make two other arguments, both of which are unavailing. First, the defendants contend that the Bankruptcy Court did not sufficiently consider in its jurisdictional analysis the Sale Support Agreement, Defs.' Obj. at 17, but this amounts merely to a variation of the defendants' principal argument addressed in the text, and is simply wrong, given the Bankruptcy's Court's well-reasoned explanation for the irrelevancy of this agreement, particularly in light of the SSA's express direction that its terms may be superseded, bolstered by the integration clause in the 2014 Lease. *See* R&R at 24–25. The defendants also urge the exercise of supplemental jurisdiction, Defs.' Obj. at 19, but this argument is moot given the lack of subject matter jurisdiction.

10

liens." *Gupta*, 858 F.3d at 663.  Indeed, the defendants explicitly relied, when removing this case, on the standard that "'[c]laims "arising in" a case under Title 11 are limited to "administrative matters that arise only in bankruptcy cases and have no existence outside of the bankruptcy proceeding."'"  Defs.' Removal Notice ¶ 12 (quoting *In re Premium Escrow Servs., Inc.*, 342 B.R. 390, 396 (Bankr. D.D.C. 2006)).

While apparently not contesting the Bankruptcy Court's findings that they do not meet the standard articulated above for "arising in" jurisdiction, the defendants counter that a different standard applies such that "arising in" jurisdiction is triggered when a bankruptcy court order must be interpreted to assess a common law claim.  Defs.' Obj. at 8 ("[F]ederal bankruptcy jurisdiction [exists] over contract and tort claims when their resolution requires the interpretation of bankruptcy court orders.").  Relying almost exclusively on *Luan Inv. S.E. v. Franklin 145 Corp.* (*In re Petrie Retail, Inc.*), 304 F.3d 223 (2d Cir. 2002), the defendants contend that "arising in" jurisdiction exists here because "resolution of the parties' dispute depends on the interpretation of the bankruptcy court's sale order."  Defs.' Obj. at 10; *see also* Defs.' Reply Supp. Obj. ("Defs.' Reply") at 14, ECF No. 10 (arguing that their "counterclaims require both enforcement and interpretation of the bankruptcy court's orders that incorporated the Sale Support Agreement Term Sheet concerning the HVAC obligation.").  The Second Circuit's decision in *Petrie Retail* has superficial similarities to the instant dispute but the defendants' reliance is misplaced, as the Bankruptcy Court correctly pointed out.  R&R at 30–31.

In *Petrie Retail*, as here, a landlord sought to recover rent due from the current tenants, which had assumed a lease from a debtor in bankruptcy after the Bankruptcy Court approved the lease assignment in a sale order that also excluded, and enjoined any claim to, liabilities existing prior to the assignment.  304 F.3d at 226–27.  Also similar to the posture of this case, in *Petrie*

11

*Retail*, the landlord contended "that the bankruptcy court did not have subject matter jurisdiction over the contract dispute," arguing that "it was part of a post-sale contract dispute between two non-debtors." *Id*. at 228. In this regard, the *Petrie Retail* court acknowledged that the contract dispute "could arise outside of bankruptcy proceedings [which] weighs against its core status" falling under the bankruptcy court's jurisdiction. *Id*. at 229. Nevertheless, based on "a combination of factors," *id*., the Second Circuit approved the continued exercise of bankruptcy jurisdiction, under 28 U.S.C. § 157, citing three reasons: (1) "the dispute . . . was based on rights established in the sale order," which allowed the assumption of a lease with certain provisions excepted, and the landlord's demand on the new tenants "involved excluded liabilities as defined in the sale order," *id*. at 229–30; (2) the motion at issue "sought enforcement of a pre-existing injunction issued" by the Bankruptcy Court as part of the sale order, and a "bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders," *id*. at 230; and (3) "the dispute . . . involved an issue already before the bankruptcy court as part of . . . [the landlord's] claim against the estate," namely, whether the landlord was entitled to additional rent under a rent-escalation clause in the original lease, *id*. The court explicitly "express[ed] no view as to whether any one of these facts alone would" establish a bankruptcy court's "core" jurisdiction under 28 U.S.C. § 157. *Id*. at 231.

The dispute at issue in *Petrie Retail* was over the terms of the debtor's original lease, interpretation of which was integral to the adjudication of the bankruptcy proceeding since those lease terms "determine[d] what assets of the debtors' estate should be distributed to [the landlord]." *Id*. at 230. Here, by contrast, the dispute is over the terms of a new 2014 Lease, which, through its integration clause, expressly "supersedes" and renders moot any obligations set out under any prior agreements by the debtor or the plaintiff, including in either the SSA or

Case 15-10027-SMT   Document 1441   Filed 11/28/17   Page 13 of 18

the Asset Purchase Agreement.  2014 Lease § 24.10.  In other words, the dispute between the parties in this case rests on their respective obligations under the 2014 Lease, which was referenced in but not integral to Specialty Hospital's bankruptcy proceedings.  As a consequence of this critical difference between the instant dispute and the focus of the *Petrie Retail* case, none of the three factors identified by the *Petrie Retail* court as conferring bankruptcy court jurisdiction is present here.

For instance, in this case, the first *Petrie Retail* factor regarding whether the dispute is "based on rights established in the sale order," *id*. at 229, is not met since, as the Bankruptcy Court clearly found, "[n]o issue regarding interpreting the *Sale Order* exists in that regard," R&R at 24 (emphasis in original).  The defendants' vigorous dispute of this finding is not persuasive. They contend that this case "turns on" the Sale Order, rather than the 2014 Lease, Defs.' Obj. at 15, because their "counterclaims require both enforcement and interpretation of the bankruptcy court's [Sale Order] that *incorporated* the Sale Support Agreement Term Sheet concerning the HVAC obligation."  Defs.' Reply at 14 (emphasis added).  Notably, the defendants do not and cannot assert that the Sale Order expressly details any obligations by the plaintiff for physical maintenance or improvements to the property that would require interpretation.  Instead, the Sale Order's sole reference to the SSA is to confirm that upon closing of the sale of the debtor's assets, the parties would enter a new lease and the "existing Lease Agreement will be rejected (or assumed as amended and restated)."  Sale Order ¶ 32 (quoting SSA ¶ 6).  This provision in the Sale Order plainly contemplated that a new lease would be entered upon certain enumerated payments by the defendants' parent company at closing.  *Id*.  For purposes of the Sale Order, compliance with the payment schedule to ensure assumption and assignment of the 2014 Lease was significant to satisfy the relevant provisions of the Bankruptcy Code, not whether all of the

SSA's terms and conditions were satisfied by the plaintiff. Indeed, despite trying to shoe-horn the Sale Order into this case, even the defendants admit that the obligations they claim the plaintiff failed to fulfill "were established by the Sale Support Agreement," Defs.' Reply at 14, an admission consistent with the Bankruptcy Court's conclusion that the Sale Order is not truly at issue here, R&R at 25.

Indeed, as the Bankruptcy Court pointed out, the Sale Support Agreement was a private agreement between the plaintiff and the defendants' parent company laying the groundwork for the 2014 Lease. R&R at 22–25. "How [the plaintiff and defendants' parent company] structured the sale of the debtor's assets and how they composed the provisions of the [2014 Lease] . . . was entirely their decision," and the "reasons for the deal being structured as it was do not bear on the jurisdictional question." *Id.* at 24–25. In short, reference to the SSA, a private deal, in the Sale Order simply does not confer federal bankruptcy jurisdiction since the Sale Order is not the source of the obligations or rights at the core of the instant dispute, and therefore the first *Petrie Retail* factor is plainly not present here.[7]

The second *Petrie Retail* factor regarding whether the dispute requires "enforcement of a pre-existing injunction issued as part of the bankruptcy court's sale order," 304 F.3d at 230, is also not present here. The Sale Order barred only suits against the bankruptcy estate or the lease assignee over issues predating the 2014 Lease. Sale Order ¶ 33 (barring "any non-Debtor party . . . from raising or asserting against the Debtors or the Purchaser, or the property of either of

---

[7]     Likewise, the Sale Order's approval of the Asset Purchase Agreement, which also references the SSA, does not support the exercise of bankruptcy jurisdiction. Sale Order ¶ 45 ("[I]t being the intent of the Court that the Asset Purchase Agreement be authorized and approved in its entirety"). As noted, the Asset Purchase Agreement, to which the plaintiff was not a party, conditioned the defendants' parent company's purchase of the debtor's assets on plaintiff being "in full compliance with the terms of the [SSA]," Asset Purchase Agreement § 8.1(l), but also provides that all such terms "may be waived in writing by Buyer," *id.* § 8.1. Again, the Sale Order was concerned with whether the sale went forward, not with whether the SSA conditions were satisfied to the satisfaction of the Buyer or waived. *See* R&R at 24. Consequently, even if the defendants did not get all they believe they were owed under Asset Purchase Agreement, this does not trigger a need to interpret or enforce any provision of the Sale Order.

14

them, any [claim] existing as of the date of the Sale Hearing, or arising by reason of the consummation of transactions contemplated by the Asset Purchase Agreement.").[8] While the defendants note the "enforcement" requirement, Defs.' Obj. at 15, they argue only that "interpretation" of the Sale Order is required, *see, e.g.*, Defs.' Obj. at 8, 11, before asserting in reply that "enforcement" is also required here, *see, e.g.*, Defs.' Reply at 2, 8, 14. Whichever way the defendants frame their argument, no injunction is at issue here because, in contrast to *Petrie Retail* and the prior litigated dispute between these parties, *see supra* note 8, the landlord has not sued over pre-assignment obligations.

Finally, the third *Petrie Retail* factor, whether the same issue is already before the Bankruptcy Court, 304 F.3d at 330, is not present here since none of the instant parties has an existing claim against the bankruptcy estate of Specialty Hospital.

Having failed to demonstrate that interpretation or enforcement of any Bankruptcy Court order is required to resolve the parties' contract dispute, the defendants make the last-gasp alternative argument that the plaintiff's alleged misconduct in itself creates "arising in" jurisdiction because it was "'inextricably intertwined' with the administration of the bankruptcy sale." Defs.' Obj. at 18; *see also* Defs.' Reply at 16–18. The law does not support this basis for bankruptcy jurisdiction. "[T]he mere coincidence that wrongful conduct that is the basis for a

---

[8]      By contrast to the instant dispute, an injunction was at issue in a prior dispute among the parties over the plaintiff's demands for the defendants to satisfy obligations incurred prior to assumption of the 2014 Lease. The Bankruptcy Court exercised jurisdiction, granted a declaratory judgment that the defendants had no liability for pre-assignment costs, and explicitly ordered the plaintiff not to bring any such claims. Order of Final Judgment, ECF No. 59, Adv. Proc. 15-10010 (Bankr. D.C.); *see also* Defs.' Obj. at 6–7 & nn.2–3. The plaintiff in *Petrie Retail* had violated a similar injunction. *Petrie Retail*, 304 F.3d at 225 (describing the case as "an ongoing attempt by [the lessor] to recover from a bankrupt"). Thus, both *Petrie Retail* and the instant parties' prior dispute illustrate that the Bankruptcy Court may appropriately exercise jurisdiction when the landlord seeks satisfaction of pre-assignment obligations in violation of a sale order's injunction. This jurisdictional scope does not reach the instant dispute where the landlord seeks only rent owed under the 2014 Lease, which by its terms eschewed any prior obligations and provided the specific remedy, acknowledged by the defendants to be "withholding the cost of repairing any deficiencies from the future rent payments provided for in that Lease," Defs.' Obj. at 18 (citing 2014 Lease ¶ 8.4), for any HVAC compliance failures.

plaintiff's claims, or for a defendant's defenses to those claims, took place in a bankruptcy case" does not establish "arising in" jurisdiction.  R&R at 25–26 (citing *Stoe*, 436 F.3d at 218–19; *Torkelsen v. Maggio* (*In re Guild & Gallery Plus, Inc.*), 72 F.3d 1171, 1178 (3d Cir. 1996)).  In *Torkelsen*, for example, the Third Circuit held that "even if the [bankruptcy] estate has a direct financial interest in a claim that a party proposes to litigate in bankruptcy court, this fact, by itself, does not provide an adequate jurisdictional foundation" for a suit against a bankruptcy trustee for actions taken in that capacity with non-estate property.  72 F.3d at 1180 (citing *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982)).  Moreover, even in a case where a debtor alleged abuse of process by a creditor for initiating a proceeding "to obtain a determination that the debts owed to it by [the debtor] were nondischargeable under 11 U.S.C. § 523(a)(6)," the Bankruptcy Court held that it lacked jurisdiction because the counterclaims at issue "arose postpetition and . . . would not affect the administration of the estate." *Va. Hosp. Ctr.-Arlington Health Sys. v. Akl* (*In re Akl*), 397 B.R. 546, 547–48 (Bankr. D.D.C. 2008).  In that case, the Bankruptcy Court emphasized that "an '"arising in"' proceeding is one that must not only arise from events in the bankruptcy case but that by its nature is of an '"administrative"' character because it requires disposition in the bankruptcy case in order for the bankruptcy case to be administered."  R&R at 27 (quoting *In re Akl*, 397 B.R. at 350).

Here, the bankruptcy estate does not have any interest in either party's claims, nor do their claims affect the administration of the estate.  The plaintiff's obligations under the SSA "were pertinent to the bankruptcy case only because the *Sale Order* allowed [defendants' parent company] to back out of completing the purchase if the obligations had not been met."  R&R at 29 (emphasis in original).  With the sale concluded and the bankruptcy estate out of the picture, the plaintiff's alleged noncompliance with those obligations "is of no concern to . . . the

16

bankruptcy estate." *Id.* Unlike "orders to turn over property of the estate, and determinations of the validity, extent, or priority of liens" which "arise in" bankruptcy, *Gupta*, 858 F.3d at 663, the defendants' requested relief, Defs.' Ans. at 38–39, if granted, would have no impact on the administration of the estate—it would affect only the obligations between the defendants and the plaintiff. The defendants' repeated emphasis that the plaintiff's alleged breach of contract occurred "*while the bankruptcy sale was pending*," Defs.' Obj. at 17 (emphasis in original), is simply not legally significant to resolving the instant dispute.[9] The Bankruptcy Court was correct that "it is only a coincidence that if such wrongdoing occurred, it occurred in the bankruptcy case" and that this "dispute does not affect the administration of the bankruptcy case." R&R at 33. Thus, no "arising in" jurisdiction exists.

In sum, the defendants have fallen short of showing that the contract dispute "arises in" bankruptcy. For this showing, the "fundamental question is whether the proceeding by its nature, not its particular factual circumstance, could arise <u>only</u> in the context of a bankruptcy case," *Gupta*, 858 F.3d at 665 (emphasis in original), and this landlord-tenant case is not bankruptcy-specific.

### B. "Related to" Jurisdiction

A matter is "related to a case under title 11," 28 U.S.C. § 1334(b), if "*the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy*." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984) (emphasis in original). The defendants seek to expand this narrow scope of "related to" jurisdiction to cover the renegotiation and

---

[9] The defendants cite, without explanation, *In re McClelland*, 460 B.R. 397, 405 (Bankr. S.D.N.Y. 2011), to support their argument that "[t]he contractual breaches at issue here were 'inextricably intertwined' with the administration of the bankruptcy sale and thereby provide a basis for jurisdiction." Defs.' Obj. at 18. In that case, "[t]he Plaintiff sued an estate professional retained by order of the bankruptcy court and compensated from the bankruptcy estate, on a claim grounded on work performed for the bankruptcy estate." *In re McClelland*, 460 B.R. at 405. Plainly, the orders of the bankruptcy court and administration of the bankruptcy estate were starkly at stake in that case, which only serves to show the lack of any such "intertwining" here.

17

assignment of the 2014 Lease because this lease was entered due to the bankruptcy proceeding. Defs.' Obj. at 18–19.  They cite no authority for this alternative and expanded standard for evaluating "related to" jurisdiction.  *See id.*  Rather, the effect on the bankruptcy estate is the test, and the Bankruptcy Court applied this standard correctly, concluding that no "related to" jurisdiction exists in this case because the dispute between the plaintiff and the defendants will not have any impact on the bankruptcy estate.  R&R at 34.  The defendants do not and cannot point to any effect that their landlord-tenant dispute will have on the original debtor-lessee's estate, and therefore have established no "related to" jurisdiction under 28 U.S.C. § 1334(b).

## IV.  CONCLUSION

For the foregoing reasons, the Bankruptcy Court's recommendation is adopted.  The defendants have failed to satisfy their burden of establishing subject matter over this case, under 28 U.S.C. 1334(b), and, consequently the plaintiff's motions to withdraw the reference to the Bankruptcy Court and to remand this case to the Superior Court are granted.[10]  An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date: November 28, 2017

_____
BERYL A. HOWELL
Chief Judge

---

[10] The plaintiff's request for attorneys' fees, Pl.'s Reply Supp. Mot. Remand ("Pl.'s Reply") at 21–25, ECF No. 14, is denied.  Although attorney's fees and "just costs" may be awarded upon issuance of an order remanding a case, *see* 28 U.S.C. § 1447(c), such fees generally are allowed "only where the removing party lacked an objectively reasonable basis for seeking removal," *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005), which has been construed to mean when the basis for removal is directly "contrary to well-settled law or binding authority," *Nat'l Consumers League v. Gen. Mills, Inc.*, 680 F. Supp. 2d 132, 141 (D.D.C. 2010).  The "lack of controlling precedent in this Circuit," *Breathe DC v. Santa Fe Nat. Tobacco*, 232 F. Supp. 3d 163, 172 (D.D.C. 2017), precluding removal shows that the defendants' arguments, however tenuous, are not "objectively unreasonable."  The plaintiff's argument that "unusual circumstances" nevertheless warrant fees here, Pl.'s Reply at 23 (citing *Martin*, 546 U.S. at 141), is a closer call.  The "unusual circumstances" exception may apply when a party "fail[s] to disclose facts necessary to determine jurisdiction." *Martin*, 546 U.S. at 141.  Here, the defendants took two years to waive their "back-up, protective" reliance on diversity jurisdiction, Defs.' Resp. at 15; *see also supra* note 3, and resisted jurisdictional discovery, Defs.' Resp. at 25.  Yet, the relevant facts about defendants' owners' citizenship were not "necessary to determine jurisdiction," *Martin*, 546 U.S. at 141, until the question of federal bankruptcy jurisdiction was resolved.  Thus, no award of attorneys' fees under the "exceptional circumstances" exception will be granted.

18